UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HINDENBURG RESEARCH LLC,

                          Plaintiff,

       -against-

ENOCHIAN BIOSCIENCES INC.,

                       Defendant.

Case No.:

**COMPLAINT AND
JURY DEMAND**

Plaintiff Hindenburg Research LLC ("Hindenburg" or "Plaintiff"), as and for its Complaint against Enochian BioSciences Inc. ("Enochian" or the "Company"), alleges as follows.

1.      Defendant Enochian purports to be a biopharmaceutical company that utilizes cutting-edge medical science and technology to develop "gene-modified cell therapy" that it claims can be applied in various medical fields, from infectious disease to oncology. Hindenburg publishes thoroughly researched reports on publicly traded companies. When a detailed Hindenburg exposé revealed that the man whom Enochian described as the "inventor and co-founder" of the Company, whose "scientific research form[ed] the basis of [its] research and development" was both a con man and an alleged murderer who had neither the medical nor doctoral degrees that he claimed, Enochian's stock and credibility as a public company suffered greatly. Enochian's response was to undertake a frantic effort to save itself with a campaign of deflection and misdirection in which, among other things, it libeled Hindenburg, whose business relies on its well-deserved reputation for thoroughness, precision, and accuracy.

<u>PARTIES</u>

2.      Hindenburg is a limited liability company with its principal place of business in New York, New York. Hindenburg's sole member is a citizen of New York.

3.      Hindenburg is a research firm that conducts deep-dive investigative research into publicly traded companies. Hindenburg specializes in, *inter alia*, investigating and exposing companies that enrich themselves and defraud investors by concealing poor management, fraudulent conduct, illegal and unethical practices, and other malfeasance.

4.      Researching the companies that Hindenburg investigates requires months, and sometimes years, of methodical and rigorous investigation. If Hindenburg's investigation unearths corporate mismanagement or malfeasance, it publishes detailed, meticulously researched reports setting forth its findings.

5.      Hindenburg's research and reports play a critical role in the market by exposing corporate fraud, misfeasance and/or mismanagement, thereby protecting investors. Indeed, traditional gatekeepers preventing the type of market manipulation that Hindenburg investigates – such as financial journalists or regulators like the U.S. Securities and Exchange Commission ("SEC") – often act in response to facts first revealed publicly by Hindenburg reports.

6.      Hindenburg's meticulously detailed reports have engendered major market corrections, additional investigative reporting, and civil and criminal government actions. Recent examples of Hindenburg's impact include the following:

      a.      In March 2021, Hindenburg released a report on the electric vehicle company Lordstown Motors, revealing, among other things, evidence showing that the company had exaggerated pre-order demand for its trucks and lacked the capacity to build the trucks for which it claimed to have orders. Hindenburg's

report led to inquiries from the SEC and U.S. Department of Justice ("DOJ"), a lowered rating of the company's stock price and the resignation of the company's CEO and CFO.

b.    In September 2020, Hindenburg released a report on electric vehicle company Nikola entitled, "Nikola: How to Parlay an Ocean of Lies Into a Partnership With the Largest Auto OEM in America." This report led to extensive attention in mainstream media like *The Wall Street Journal* ("*WSJ*"), *Financial Times*, *CNN*, *Barron's* and *CNBC*, among others. Following the release of Hindenburg's report, the SEC announced civil charges against Nikola and its founder, Trevor Milton, and the DOJ announced criminal charges against Mr. Milton.

c.    In June 2020, Hindenburg released a report about WINS Finance, highlighting that a Chinese subsidiary of the company was subject to an asset freeze that had not been disclosed to U.S. investors. Four months after Hindenburg's report, the NASDAQ stock exchange delisted WINS Finance as a result of the undisclosed asset freeze.

d.    In April 2020, at the onset of the Coivd-19 pandemic, Hindenburg reported that a newly-announced deal for testing kits by a company called SC Worx was a fabrication. Hindenburg also raised questions about the ethics and practices of SC Worx's management, noting that the CEO was a convicted felon and the company's claimed Covid-19 testing partner was run by a convicted rapist. Following Hindenburg's report, the SEC halted trading of SC Worx and eventually sued the company as a result of its fraudulent conduct.

3

e.  In March and December 2018, Hindenburg reported that the cannabis company Aphria made a series of overvalued acquisitions that had indicia of insider self-dealing. After Hindenburg's reporting, insiders admitted to having undisclosed stakes in its own acquisitions, leading to the resignation of the company's CEO, an executive shake-up and a subsequent write-down of the value of the reported-on acquisitions.

7.  While Hindenburg's aggressive and critical reports play an important role in shining light on bad corporate actors, Hindenburg also has an openly stated financial interest in its research. As Hindenburg discloses in its exhaustive reports, Hindenburg aligns its capital with its research by taking so-called "short" positions on the companies it investigates. By exposing corporate mismanagement and/or misconduct, Hindenburg is predicting that the market will react accordingly to the new information about the reported-on company and thatthe share price may decrease, to its financial benefit.

8.  Hindenburg's business therefore depends not just on the accuracy of its reporting, but also on the reputation it has earned through its exhaustive and reliable investigations. Indeed, as many of Hindenburg's reports have been confirmed, its reputation in the financial industry has grown. Hindenburg's reports are now considered crucial information for investors and are often reported on by traditional media outlets like *WSJ*, *Financial Times*, *The New York Times*, and others.

9.  Upon information and belief, Enochian is a corporation formed and existing under the laws of the State of Delaware with its principal place of business in Los Angeles, California.

10.  Enochian is a publicly traded company listed on the NASDAQ that is headquartered in New York City.

11.     Enochian describes itself as "a biopharmaceutical company dedicated to identifying, developing, manufacturing and commercializing gene-modified cell therapy" that "can be applied to multiple indications including HIV/AIDS and Oncology." Enochian has stated that it is "committed to using its exclusive licenses for genetically modified cellular and immune-therapy technologies to seek to prevent or potentially cure HIV, to potentially provide life-long cancer remission of some of the deadliest cancers and to potentially cure HBV. We intend to do this by genetically modifying, or re-engineering, different types of cells, depending on the therapeutic area and then injecting or reinfusing the re-engineered cells back into the patient to provide treatment."

12.     Enochian's management has attended one or more NASDAQ events in New York City, including a NASDAQ bell-ringing ceremony at which it touted its research into potential cures for HIV/AIDS, cancer and other diseases, and at which Enochian celebrated its new listing on NASDAQ.

13.     Upon information and belief, actual and prospective Enochian shareholders are based in New York City, including both individual and institutional investors.

JURISDICTION and VENUE

14.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Hindenburg and Enochian are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.     The Court has personal jurisdiction over Enochian pursuant to New York CPLR § 302(a)(1).

16.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391 because, inter alia, Enochian is subject to personal jurisdiction in this District.

FACTUAL ALLEGATIONS

Enochian Enters Into Agreement with Serhat Gumrukçu

17.     On or about November 25, 2019, Enochian issued a press release announcing that it had entered into an agreement with Serhat Gumrukçu ("Gumrukçu"). The press release, which was headlined "Enochian Biosciences Expands its Infectious Disease Pipeline by Entering into an Agreement in Principle to Acquire an Exclusive License for a Novel Hepatitis B Virus Treatment," stated, in pertinent part, that it had entered into "an agreement in principle to acquire an exclusive, license for a treatment under development aimed to treat the Hepatitis B Virus (HBV) infections from G-Tech Bio, LLC," a company controlled by Gumrukçu. The press release quoted statements by various medical researchers praising Gumrukçu. One such statement hailed the work of "the brilliant scientist, Dr. Gümrükcü" as "remarkably innovative." The release described potential cures and vaccines for HIV "based on an insight by Dr. Gümrükcü," with one medical researcher quoted as saying "Dr. Gümrükcü's scientific insight for the work is truly unique. I know of no similar approach being evaluated anywhere else in the world."

18.     Enochian's press release closed with a section dedicated to "The Inventor," Gumrukçu, which, *inter alia*, touted Gumrukçu's alleged accomplishments, including his medical training, experience and research. It stated that "[b]ased on his unique research training, Dr. Gümrükcü has become a prolific inventor, submitting various patent/provisional patent applications, which include several approaches aimed to treat or potentially cure HIV/AIDS, Hepatitis B, major solid tumors, rare but deadly diseases, and for a novel vaccine for HIV among many others." The section about Gumrukçu "The Inventor" concluded with the following:

Dr. Gümrükcü has licensed intellectual property related to HIV and several solid tumors to Enochian. Dr. Mark Dybul, MD, said, "Dr. Gümrükcü is one of those rare geniuses that is not bound by scientific discipline or dogma. He sees connections and opportunities often missed. His ideas are the purest kind: those that seem so obvious and simple once he has conceived of, and explained them.

19.     Enochian worked with Gumrukçu pursuant to its exclusive license with him for over two and a half years, regularly describing him as the "inventor and co-founder of the company" and as Enochian's "scientific founder," and largely basing its business, consisting entirely of a pre-clinical pipeline of treatments, on his work.

20.     On April 5, 2022, Enochian issued a press release captioned "Enochian BioSciences Inventor and Co-Founder Presents Data on Novel Clinical Approaches as the Invited, Concluding Plenary Speaker at the Innate Killer Summit." Enochian announced in that press release that "Dr. Gumrukçu has completed an FDA pre-IND meeting and is in the process of preparing an Investigator Initiated IND. Enochian BioSciences owns the exclusive license for the technology." Moreover, Dr. Mark Dybul ("Dybul"), Enochian's CEO, was quoted as saying "I believe it was fitting for the Summit organizers to recognize the brilliant scientific ideas of Dr. Gumrukçu. Enochian BioSciences looks forward to advancing as many of them as possible, potentially saving many, many lives."

Gumrukçu Is Arrested

21.     Seven weeks after Enochian made the above announcement about "the brilliant scientific ideas of Dr. Gumrukçu," the DOJ announced Gumrukçu's arrest in connection with an alleged conspiracy to murder Gregory Davis ("Davis"), a former business partner of Gumrukçu's. DOJ issued a press released entitled "Two Men Charged in Murder-for-Hire Conspiracy Resulting in Death," which stated:

> The Office of the United States Attorney for the District of Vermont stated that Serhat Gumrukçu, 39, of Los Angeles, California, and Berk Eratay, 35, of Las

Vegas, Nevada, were arrested yesterday after having been charged by a federal grand jury in Vermont with conspiring to use interstate commerce facilities in the commission of murder-for-hire which resulted in the death of Gregory Davis, a resident of Danville, Vermont.

22.     Later the same day, after learning of Gumrukçu's arrest by DOJ, Enochian issued a press release captioned "Enochian BioSciences Board Learns of Arrest of Co-Founder and Inventor and Expresses Strong Confidence in the Promising Future of the Company." Despite having described Gumrukçu as the Company's "inventor," "co-founder" and "scientific founder" for several years, Enochian now claimed in its press release that Gumrukçu "has had no formal role in the Company, and has no involvement with the Company's strong management, scientific team and collaborations with leaders in the field."

23.     *WSJ* published an article the same day entitled "Biotech Founder Arrested in Murder-for-Hire Scheme."  The *WSJ* article noted that Gumrukçu, who was charged with "commission[ing]" Gregory Davis's murder, had previously been listed on Enochian's website as the Company's "co-founder" and "inventor," and was described in an archived version of the Enochian site as holding medical and doctoral degrees from Russian universities. The *WSJ* article noted that "Enochian's shares fell nearly 37%" that day; that Gumrukçu "owns nearly of third of Enochian's outstanding shares" and is apparently the Company's "largest shareholder"; and that he had sold 253,000 shares for over $2 million the preceding week, while still holding (or controlling through his spouse) over 29,000,000 shares worth over $108 million after that day's stock drop.

Hindenburg Researches and Publishes an Article on Gumrukçu and His Role at Enochian

24.     Months before DOJ announced Gumrukçu's arrest, Hindenburg was researching a detailed article about Enochian – including, in particular, Gumrukçu's role in it. Hindenburg had unearthed a criminal fraud proceeding against Gumrukçu in a Turkish criminal

court. Hindenburg found letters of reference for Gumrukçu from Enochian's CEO, Dr. Dybul, and Enochian board member Dr. Carol Brosgart ("Brosgart") in the corresponding Turkish criminal court file.

25.    Dr. Dybul's letter, dated September 18, 2020 (annexed as Exhibit 1) and written on the letterhead of Georgetown University Medical Center, where Dr. Dybul was a Professor of Medicine and Co-Director, Center for Global Health Practice and Impact, read as follows:

> To whom it may concern
>
> Re: Character reference for Dr. Serhat Gumrukçu
>
> I have known Dr. Gumrukçu since 2017. I have worked closely with him in his tireless endeavors to discover entirely novel approaches to cure some of the deadliest diseases in the world including HIV, hepatitis B, solid tumor cancers without effective first line therapy, influenza and, more recently, the coronavirus that has caused the global COV1D-19 pandemic. I have been an advisor to Dr. Gumrukçu since we met. I then became Vice-Chair and, subsequently, Executive Vice Chair of the Board of Directors of Enochian BioSciences, Inc, for which Dr. Gumrukçu is Co-Founder, Inventor and Senior Scientific Advisor.
>
> In addition, I am currently a Professor of Medicine and Co-Director of the Center for Global Health Practice and Impact, Georgetown University Medical Center. Prior to that, I was Executive Director of the Global Fund to Fight AIDS, Tuberculosis and Malaria. I also served as the US Global AIDS Coordinator with the rank of Ambassador and the level of an Assistant Secretary of State, leading the President's Emergency Plan for AIDS Relief. I was detailed from the National Institutes of Health. where I was a basic scientist running a section of the laboratory of my mentor, and now friend, Dr. Anthony Fauci. I was an Upper Rear Admiral and Assistant Surgeon General of the Uniformed Public Health Services.
>
> In those roles. **I have been privileged to know Nobel Laureates, leaders of industry and philanthropy including Bill Gates, heads of state and government, among others. Dr. Gumrukçu rises to the top of that group. He is a rare genius who has tremendous potential to advance science and human development in an historical way.** Enochian has engaged as Scientific Advisory Board members several of the most distinguished people in their field who have called his scientific innovations "groundbreaking". When one of the top Hepatitis B cure researchers in the world learned of Dr. Gumrukçu approach, he said "I wish I had thought of that" and "this might be the only strategy to truly cure hepatitis B."

**Based on the strength of Dr. Gumrukçu's ideas, Enochian has collaborated with leading institutions** in the United States including The Fred Hutchinson Cancer Research Center, the University of Pennsylvania, the National Institutes of Health, the Scripps Institute and the Hepatitis B Foundation.

Three years ago, he had conceived of only one approach to cure HIV. Since that time, he has created 4 additional approaches to prevent or cure HIV, a strategy to cure hepatitis B that could become a platform to cure multiple viral infections including all strains of influenza, Zika, Dengue Fever, all coronaviruses including the one that has caused COVID-19 and many others. He has also designed an entirely novel approach for a vaccine to protect people from COVID and a completely unique strategy to cure many of the most difficult to treat cancers. And he is only beginning. **It is not an overstatement to say he might be the most productive and impactful scientist in generations.**

His work has already been recognized publicly by the American Society of Gene and Cell Therapy, the premier organization dedicated to those areas of the future of medicine. He has been named to two of their important Committees. He was an invited speakers [sic] to their special Conference on COVID-19. He had the unusual distinction of having four out of five submitted abstracts to be selected for presentation at the Annual Conference in 2020. His work on curing hepatitis B was selected as one of the most innovative new therapies at the prestigious HEP DART Conference in December of 2019.

**Dr. Gumrukçu is somewhat unique among the scientific geniuses I have met.** He is deeply compassionate, empathetic and approachable. He is an exceptional teacher. His science emanates from his deep commitment to serve people who suffer from incurable and untreatable diseases. He has the potential to contribute greatly to scientific discoveries, education, job creation and philanthropy.

I provide this strongest of recommendations freely, without any mental reservation or purpose of evasion.

Respectfully.

The Hon. Mark Dybul, MD

(emphasis added).

26.     Dr. Brosgart's letter of reference for Gumrukçu, dated September 30, 2020

(annexed as Exhibit 2), was similarly effusive in its praise of Gumrukçu regarding his purported

medical genius. Dr. Brosgart stated that, having spent 43 years focusing on "improving clinical

care and scientific research in the areas of infectious diseases (HIV, HBV, HCV, influenza,

COVID-19, etc.) and in developing therapies and vaccines for these diseases" she had worked with the "noteworthy scientists in the area, both domestically *and* globally," and that "Dr. Gumrukçu is a true leader in the field." Dr. Brosgart, who noted that she had served as "the Senior Advisor on Science and Policy" at the U.S. Center for Disease Control since 2011, hailed Gumrukçu's work, stating "[t]he work of Dr. Gumrukçu could well lead to curative therapy for HIV, HBV, cancers *and* other infectious diseases and malignancies. As a country, we will benefit from his contributions to science and medicine And, his work could potentially offer cures to the hundreds of millions of individuals living with HIV and HBV globally."

27.     A researcher hired by Hindenburg called Dr. Brosgart on the evening of May 25, 2022, following DOJ's announcement of Gumrukçu's arrest. When the Hindenburg researcher asked Dr. Brosgart for her reaction to that news, she referred him to Enochian's press release of earlier that day. Dr. Brosgart told Hindenburg's researcher that if he had further questions, he should contact Dr. Dybul, Enochian's CEO. When asked for Dr. Dybul's cell phone number, Dr. Brosgart told the Hindenburg researcher to text her and stated that she would forward his text to Dr. Dybul.

28.     During that same call, Hindenburg's researcher told Dr. Brosgart that her letter of reference for Gumrukçu had been filed in a criminal case in Turkey in which Gumrukçu was accused of defrauding a cancer patient, asking thereafter whether the letter was genuine and what, if anything, Dr. Brosgart knew about the fraud charges against Gumrukçu in Turkey. Dr. Brosgart said that she would not respond on the telephone, but repeatedly told Hindenburg's researcher that she would respond to a written inquiry from him. In response, Hindenburg's researcher told Dr. Brosgart that he would follow up with her in writing via *WhatsApp*.

29.     As promised, Hindenburg's researcher wrote to Dr. Brosgart on May 26, 2022, attaching a copy of the letter that she had written on Gumrukçu's behalf. Hindenburg's researcher again asked Dr. Brosgart whether she was aware of the criminal charges against Gumrukçu in Turkey and whether she had provided the letter for Gumrukçu in connection therewith. Dr. Brosgart's only response was "Please follow up with Mark Dybul, the Enochain [sic] CEO." Hindenburg's researcher replied that he was asking about the reference letter that she, not Dr. Dybul, had provided, and asked again whether it was genuine. The last sentence of the Hindenburg researcher's *WhatsApp* conversation with Dr. Brosgart stated "So I assume by your silence you accept that this reference letter is correct and you stand by your statements?" Dr. Brosgart did not respond.

30.     After hearing nothing further from either Dr. Brosgart or Dr. Dybul (to whom Dr. Brosgart had represented to the researcher on May 30, 2022, that she would forward his written inquiry), Hindenburg's researcher sent an email to Dr. Dybul, stating that he was "following the issue of Serhat Gumrukçu, his background and relationship with Enochian." In that communication, Hindenburg's researcher asked Dr. Dybul "about a character reference purporting to be from you and provided to Istanbul's No 8 Criminal Court in Turkey in Sept. 2020," attaching a copy of the letter, which, he explained, he had obtained from the case files from the criminal prosecution of Gumrukçu "for defrauding a terminal cancer patient." Hindenburg's researcher further asked whether Dr. Dybul had actually provided the letter of character reference, and whether he was aware of the referenced criminal charges against Gumrukçu, for whom there was an "outstanding bench warrant for his arrest and an international travel ban imposed by a Turkish court."

31.    Hindenburg's researcher also asked Dr. Dybul about the press release Enochian had issued in the wake of Gumrukçu's arrest, which asserted that Gumrukçu had never had any formal role with Enochian. Hindenburg's researcher asked Dr. Dybul "[w]hy do you state 'there has never been a formal role' for Gumrukçu when publicly and on multiple occasions Enochian executives, including yourself, have hailed him as co-founder, 'scientific founder' and inventor for Enochian," noting that an SEC filing also made clear "that the entire Enochian pipeline in its current form is attributable to Gumrukçu." Hindenburg's researcher concluded by writing "I look forward to hearing from you either via email or on my number in Spain (I'm happy to take your call at any time that is convenient to you, day or night)."

32.    Hindenburg's researcher also tried twice to contact Dr. Dybul by phone on May 30, 2022, leaving a message about the subject matter of his call and providing his contact information.

33.    Dr. Dybul never responded to the letter or telephone messages.

34.    On June 1, 2022, Hindenburg published on its website a thoroughly researched and detailed expose on Enochian entitled "Miracle Cures and Murder For Hire: How A Spoon-Bending Turkish Magician Built a $600 Million Nasdaq-Listed Scam Based On A Lifetime of Lies" (hereafter, the "Hindenburg Report"; *see* https://hindenburgresearch.com/enochian/; also annexed as Exhibit 3).

35.    The Hindenburg Report, which dubbed Gumrukçu "a lifelong con artist," revealed his history of fraudulent conduct, previous criminal and civil fraud charges against him, his fake medical and doctoral degrees, and, finally, how Enochian had fallen – hook, line and sinker – for Gumrukçu's elaborate fraud, enabling Gumrukçu to make millions at the expense of Enochian

shareholders before his charade came crashing down with his arrest for murder. The Hindenburg
Report laid out, *inter alia*:

     a.     Gumrukçu's alleged involvement in a plot to murder Davis, "a Vermont father
of six," "just 19 days before Gumrukçu was scheduled to appear in court to
defend himself against felony fraud allegations related to a 2016 deal with
Davis. Federal prosecutors argued that the prospective merger deal that
eventually resulted in Enochian going public served as a key motive for the
murder";

     b.     that Enochian's own disclosures indicate that its pipeline of preclinical
vaccines and treatments are dependent on licenses from Gumrukçu and
Gumrukçu's research;

     c.     that Gumrukçu faces criminal charges in his native Turkey, where he was
arrested in 2012 for fraudulently claiming to be a doctor and charging a family
$275,000 to treat a terminally ill cancer patient, who subsequently died, with
substances a real oncologist described as "useless";

     d.     that after evading an arrest warrant and coming to the United States, in 2015
Gumrukçu sold more worthless "miracle" cures to the desperate parents of a
child in Pennsylvania who had terminal cancer, and that after the boy died
following an initial $59,000 treatment, Gumrukçu had refused to return the
family's advance payment of $253,000;

     e.     that Enochian CEO, Dr. Dybul, had written a "glowing letter of
recommendation" dubbing Gumrukçu a "'rare genius' who had come up with

platforms to cure" a variety of diseases, which letter had been "included in the Turkish criminal court record";

f.      that in 2017, Gumrukçu had been arrested by California authorities for a "slew of white-collar crimes";

g.      that "[d]espite the ongoing criminal proceeding, Enochian still moved forward with acquiring and taking public a Gumrukçu-affiliated entity in January 2018, describing Gumrukçu as the 'sole inventor' of all of the company's technology" – a deal that yielded Gumrukçu and related persons and entities 50% of the combined Company;

h.      that Gumrukçu was allowed to attend the NASDAQ bell-ringing ceremony for Enochian, at which he was praised as Enochian's "scientific founder," while he awaited sentencing following a guilty plea to a felony (which was later reduced to a misdemeanor after he paid $1 million in restitution to his victims);

i.      that Enochian executives were apparently aware of Gumrukçu's criminal history, but moved forward with the relationship with Gumrukçu despite knowledge of his being charged with 14 felony counts and failed to disclose the criminal proceedings against Gumrukçu to Enochian shareholders;

j.      that Gumrukçu was not licensed to practice medicine and, worse, that he had no authentic medical degree or Ph. D. – he had apparently purchased a fake medical degree on the black market;

k.      that Gumrukçu had previously admitted to Turkish police that his highest level of education was a high school degree;

l.    that Gumrukçu's lifetime of deception dated back to his work as a magician in Turkey, under the sobriquet "Dr. No," where he entertained audiences with spoon-bending and other tricks, and "perform[ed] as a mentalist, claiming magical healing powers";

m.    that despite Enochian's claims that top scientists stood behind the research of this fake doctor on whose work Enochian relied, others were backing away, including: (i) an oncologist whom Gumrukçu claimed was his mentor; and (ii) a world renowned microbiologist who had once served on Enochian's Scientific Advisory Board and was previously quoted by Enochian as saying that he was "blown away" by Gumrukçu's work, who now wrote "I agree retrospectively I should have done some due-diligence," adding that he had never validated Gumrukçu's purported work";

n.    that a former Enochian executive told Hindenburg "I left because I lost scientific trust in what [Gumrukçu] was promoting…. I had a few facts that corroborated that he lied to me and when scientists start to lie a little bit and massage the data, then I am afraid to have another Elizabeth Holmes story"; and

o.    that Gumrukçu had conned Enochian out of some $20 million in shareholder money, while he and his spouse retained the largest ownership stake in Enochian – about 32%.

<u>Enochian Responds By Libeling Hindenburg</u>

36.    Faced with this evidence that so much of Enochian's research and drug pipeline was based on the elaborate fraud of a con artist and alleged murderer who had none of the

credentials that the Company had been touting – and on which shareholders had relied – Dr.

Dybul, as Enochian's CEO, published a false and misleading letter to shareholders on

Enochian's website on June 1, 2022 (hereafter, the "Shareholder Letter").

37.     Desperate to eschew blame for his management team's inexcusable failure to

perform due diligence with respect to the bona fides of the Company's "inventor" and "co-

founder," Dr. Dybul's letter shamelessly attacked Hindenburg for exposing his negligence and

gullibility. Dr. Dybul stated that "[s]horters of Enochian" had "released misleading propaganda

about the Company." Dr. Dybul offered a carefully and misleadingly worded disclaimer,

asserting: (i) that "the inventor [*i.e.*, Gumrukçu] has never held a formal role with the company"

– thus ignoring his repeated references to Gumrukçu as the Company's "inventor" and "co-

founder"; (ii) that the Company "had no knowledge of *certain* legal issues in which the inventor

was involved in *foreign* jurisdictions" – thus studiously avoiding the Company's awareness of

certain *other* legal issues – including civil and criminal charges of fraud – in *domestic* U.S.

jurisdictions; and (iii) that "the inventor's scientific advisory role with Enochian was terminated

as soon as the Company learned about these allegations last week" – again avoiding the fact that

the Company failed to "terminate" the inventor until the most recent allegations against him –

*i.e.,* conspiracy to commit murder.

38.     Remarkably, Dr. Dybul also stated that the Company's "value and promise"

remained based "on the inventor's [*i.e.,* Gumrukçu's] ideas – not on his alleged actions," thus

blindly ignoring the fact that the so-called "inventor" was an uncredentialed con man.

39.     Dr. Dybul's letter to shareholders – which was also filed with the SEC as part of a

Form 8-K on or about June 2, 2022 (*see* excerpt of Form 8-K, including the Shareholder Letter,

annexed as Exhibit 4) – then went on to specifically address the Hindenburg Report, falsely

accusing it of "misrepresentations" concerning the "character references" from Dr. Brosgart and Dr. Dybul that had been filed in the criminal proceeding against Gumrukçu in Turkey, stating:

> The Board and Management were unaware of the lawsuit in Turkey until a writer started contacting Board members late last week. As a footnote in the article indicates, there is no central database for pending lawsuits in Turkey. **The character references from Dr. Carol Brosgart and me were provided as part of a U.S. citizenship application in 2020 without any knowledge of the Turkish case. Dr. Brosgart provided that information in writing to the author, yet his story knowingly misrepresented the purpose of the reference.**

(emphasis added).

40.     As set forth in detail above, neither Dr. Brosgart nor Dr. Dybul had offered *any* response when Hindenburg's researcher called and wrote to them about their "character references" for Gumrukçu. In a desperate attempt to deflect shareholder attention away from his mismanagement and culpability, Dr. Dybul, as Enochian's CEO, falsely accused Hindenburg of "misrepresentations."

41.     Counsel for Hindenburg wrote to Enochian on June 2, 2022, demanding a prompt and public retraction of Dr. Dybul's false statement asserting that Dr. Brosgart had advised Hindenburg's researcher that Dr. Brosgart's and Dr. Dybul's character references were provided as part of Gumrukçu's application for U.S. citizenship and the accusation that the Hindenburg Report had "knowingly misrepresented the purpose of the reference." (*See* June 2, 2022, letter of Bryan A. Wood, Esq. to Enochian, annexed as Exhibit 5.) Hindenburg's counsel set forth all the salient facts concerning the calls and written texts of Hindenburg's researcher to Dr. Brosgart, as well as his attempts to reach Dr. Dybul – neither of whom offered *any* response concerning their character reference letters on Gumrukçu's behalf. Explaining the harm that Dr. Dybul had visited on Hindenburg by falsely accusing it of knowing misrepresentations, Hindenburg's counsel explained:

Hindenburg's reputation for thorough investigation and truthfulness is the currency of its business — investors trust, with good reason, that when Hindenburg publishes a report, it is telling the truth without fear or favor. It is thus axiomatic that knowingly false allegations claiming that Hindenburg has lied to the market visit material damage upon Hindenburg's well-earned reputation.

42.     Enochian's response to Hindenburg's demand for a retraction merely exacerbated the harm from Enochian's false and defamatory statements about the Hindenburg Report. On June 6, 2022, despite having been advised in writing of its slanderous falsehood, Enochian doubled down on its lies about Hindenburg and republished its slander in a barely modified version of the Shareholder Letter (the "Revised Shareholder Letter"). Forced to acknowledge the falsity of Dr. Dybul's charge that "Dr. Brosgart provided that information **in writing** to the author, yet his story knowingly misrepresented the purpose of the reference" (emphasis added), the Revised Shareholder Letter stated:

> To be clear on several misrepresentations:
>
> The Board and Management were unaware of the lawsuit in Turkey until a writer started contacting Board members late last week. As a footnote in the article indicates, there is no central database for pending lawsuits in Turkey. The character references from Dr. Carol Brosgart and me were provided as part of a U.S. citizenship application in 2020 without any knowledge of the Turkish case. Dr. Brosgart provided that information to the author*, yet his story knowingly misrepresented the purpose of the reference….
>
> *        ***The author was informed orally***

(emphasis added). (*See* https://investors.enochianbio.com/news/news-details/2022/Shareholder-Letter/default.aspx).

43.     Enochian filed the Revised Shareholder Letter with the SEC as part of a Form 8-K filing on or about June 7, 2022. (*See* excerpt of Form 8-K, including the Revised Shareholder Letter, annexed as Exhibit 6.)

44.     On June 8, 2022, Hindenburg's counsel again wrote to Enochian's counsel, complaining that the Second Shareholder Letter, with its falsehoods, both repeated and new, had

compounded the defamation of Hindenburg. Enochian and Dr. Dybul had knowingly or

recklessly repeated the lie that Dr. Brosgart had told the author of the Hindenburg Report that Dr.

Brosgart's and Dr. Dybul's character references for Gumrukçu had been provided as part of a

citizenship application. Dr. Brosgart had *never* provided any such information – either in writing

*or* orally, nor had Dr. Dybul or anyone else. Hindenburg's counsel therefore again demanded

"that Enochian immediately and publicly retract the Revised Shareholder Letter, delete it from

the Company's website, revise the Company's Form 8-K filing of the Revised Shareholder

Letter, and cease and desist from publishing any future defamatory statements regarding

Hindenburg — or at least that portion of the Revised Shareholder Letter and Form 8-K

containing the defamatory language cited herein and in the June 2 Letter." (*See* June 8, 2022,

letter of Bryan A. Wood, Esq., annexed as Exhibit 7.)

45.     Enochian failed to retract the Second Shareholder Letter, which remains on the

Enochian website.

46.     In the aftermath of DOJ's announcement of Gumrukçu's arrest and the

Hindenburg Report, the worst has been confirmed about his fraud and criminality. Enochian has

been forced to disclose that it, too, was defrauded by Gumrukçu, even announcing that it plans to

sue him.

47.     On or about June 27, 2022, *WSJ* published an article entitled "Biotech Wizard

Left a Trail of Fraud – Prosecutors Allege It Ended in Murder," which confirmed the worst that

the Hindenburg Report had revealed about Gumrukçu, and more. The article reported:

- that Gumrukçu – who was a magician in Turkey – co-founded Enochian, which had paid

  him more than $21 million for "consulting, research and the licensing of potential drugs

  to treat influenza, hepatitis B, HIV and Covid-19";

- that Dr. Dybul had hailed Gumrukçu as a "rare genius";

- that Gumrukçu sometimes introduced himself as the son of a royal Turkish family that reached back to the Ottoman Empire" and prosecutors said that he signed business checks "HRH" for "his royal highness";

- that Gumrukçu had preyed upon and defrauded families desperate for medical help for profoundly ill family members, conning them out of hundreds of thousands of dollars even though he had no medical credentials or license;

- that Gumrukçu apparently defrauded the CEO of Deutsche Bank AG's Turkish subsidiary, who later sued Gumrukçu and won a $1.8 million judgment, engendering investigations by federal and state authorities, who charged him with 14 felony counts, "including impersonating a lawyer and writing fraudulent checks";

- that Gumrukçu allegedly "arranged the murder of his business associate Gregory Davis because Davis had threatened to expose him as a fraud" just as "the Enochian deal was undergoing its final stages of due diligence"; and

- and that Enochian's former CEO said he became suspicious of Gumrukçu's claimed medical and doctoral degrees, and claimed that he was fired after sharing his suspicions with the Enochian board. (Dr. Dybul disputed this.)

48.     On July 1, 2022, *WSJ* published an article entitled "Enochian Biosciences Finds Falsified Data in Study of Covid-19 Treatment." Enochian had announced: (i) its discovery that Gumrukçu had altered research data; (ii) that as a result, it would review its processes for using external scientific data; and that (iii) it intended to sue Gumrukçu. The article also stated that Enochian shares had fallen in the wake of this revelation.

<u>CLAIM FOR RELIEF</u>

49.    Repeats and realleges the allegations in paragraphs 1 through 48 as if fully set forth herein.

50.    The Shareholder Letter and the Second Shareholder Letter (collectively, the "Shareholder Letters") falsely state that Hindenburg had made "misrepresentations" about the "character references" from Dr. Brosgart and Dr. Dybul that had been filed in the Turkish criminal court proceeding against Gumrukçu. The Shareholder Letters falsely stated that Dr. Brosgart had advised the Hindenburg Report's researcher that she and Dr. Dybul had provided their character references as part of Gumrukçu's application for citizenship, and falsely stated that Hindenburg "knowingly misrepresented" the purpose of those letters.

51.    Enochian's statements about the Hindenburg Report were intended: (a) to mislead Enochian investors, including both institutional and individual investors based in New York; (b) to mislead market analysts, including in particular analysts of NASDAQ companies, who are largely based in New York, the nation's financial capital; and (c) to harm Hindenburg, which is based in New York, as a way of getting back at it for the explosive revelations set forth in the Hindenburg Report.

52.    These false statements in the Shareholder Letters have defamed Hindenburg, whose business depends on its well-earned reputation for thorough and accurate research and reporting.

53.    The Shareholder Letters are of and concerning Hindenburg and were published on Enochian's website and in two Form 8-K filings with the SEC.

54.    Enochian published the false statements about Hindenburg with knowledge or reckless disregard of their truth or falsity.

55.     Enochian's false and defamatory statements about Hindenburg have caused and/or will continue to cause injury to its reputation and business.

56.     As a result of Enochian's false and defamatory statements, Hindenburg has been and will be damaged in an amount to be determined at trial, but believed to exceed $1 million.

**WHEREFORE**, Plaintiff prays for judgment against Enochian as follows:

1.  For money damages in an amount to be proven at trial, but believed to exceed $1 million; and

2.  For such other and further relief as the Court deems just and proper.

<u>DEMAND FOR JURY TRIAL</u>

Hindenburg hereby demands a trial by jury as to all issues so triable in this action.


Dated: New York, New York
      August 1, 2022

            PRYOR CASHMAN LLP


            By: *s/ Tom J. Ferber*
                Brad D. Rose
                Tom J. Ferber

            7 Times Square
            New York, New York  10036
            (212) 421-4100
            brose@pryorcashman.com
            tferber@pryorcashman.com

            *Attorneys for Plaintiff*